UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 24-CR-20642

JOHN E. FOWLKES,

        HON. MARK A. GOLDSMITH

        Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Dkt. 20)

Before the Court is Defendant John E. Fowlkes's motion to suppress evidence (Dkt. 20). For the reasons set forth below, the Court denies the motion.[1]

### I. BACKGROUND

Fowlkes is charged with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Indictment (Dkt. 12). At issue in this motion is whether Detroit Police Department (DPD) officers' initial encounter with Fowlkes was consensual, and if it was not, whether the officers had probable cause to detain Fowlkes to investigate possible civil infractions, one of which involved open burning of a fire on a public sidewalk.

On the evening of September 9, 2024, DPD Officers Colin Swart, Hawk Grier, and Shatyra Evans were on a routine vehicular patrol. Incident/Investigation Report at PageID.71 (Dkt. 25-2);

---

[1] In addition to Fowlkes's motion to suppress evidence, the briefing includes the Government's response (Dkt. 25), Fowlkes's reply (Dkt. 26), the Government's supplemental brief (Dkt. 38), and Fowlkes's supplemental brief (Dkt. 39). The Court also held two hearings on this motion on July 24, 2025 and November 24, 2025. Detroit Police Department Officers Colin Swart and Hawk Grier testified at the July hearing. See 7/24/25 Hr'g Tr. (Dkt. 31). Fowlkes's motion also includes exhibit clips from Officers Grier and Swart's body-worn cameras (BWC). See 7/23/25 Text-Only Notice. These clips can be accessed via the Clerk's Office.

1

7/24/25 Hr'g Tr. at PageID.104.  The officers noticed several individuals sitting and standing on the sidewalk in front of a residence in Detroit.  Incident/Investigation Report at PageID.71, 74–75; 7/24/25 Hr'g Tr. at PageID.104.  There was also a fire burning in a firepit on the sidewalk, around which the individuals were gathered.  7/24/25 Hr'g Tr. at PageID.104–105, 152; Grier BWC at 22:20:59–22:21:03.

The officers observed Fowlkes, who had been sitting in a chair on the sidewalk near the fire, stand and walk through the front gate, and up the front steps of the residence.  Incident/Investigation Report at PageID.71, 74–75; 7/24/25 Hr'g Tr. at PageID.132.  The officers stopped their patrol car to investigate what they viewed as illegal blockading of the sidewalk and maintaining an open fire.  7/24/25 Hr'g Tr. at PageID.134–135.

As the officers exited their vehicle, Fowlkes, who was on the front porch of the residence, walked back down the front steps of the house and stopped just outside the front gate.  Swart BWC at 22:20:54–22:20:56.  Officer Grier pointed his flashlight at Fowlkes and said: "walking away as soon as we walk up, what's going on?"  Grier BWC at 22:20:57–22:20:59; Swart BWC at 22:20:59.  Fowlkes replied, "nothing."  Grier BWC at 22:20:59–22:21:00.  Officer Grier continued to approach Fowlkes and stated to him that he had seen Fowlkes sitting in a lawn chair on the sidewalk and that Fowlkes was blockading the sidewalk.  Id. at 22:21:01–22:21:12.

While standing in front of Fowlkes, Officer Grier noticed the grip of a handgun protruding out of Fowlkes's front right pocket.  Incident/Investigation Report at PageID.75.  Officer Grier then asked Fowlkes: "You a CPL holder?"  Grier BWC at 22:21:18–22:21:19.  Fowlkes shook his head "no."  Id. at 22:21:20–22:21:21.  Officer Swart then handcuffed Fowlkes.  Id. at 22:21:21–22:21:40.  Officer Grier recovered a black Ruger handgun from Fowlkes's right pants pocket.  Incident/Investigation Report at PageID.75.  Fowlkes was placed under arrest for carrying a

2

concealed weapon. Id. Officer Swart also wrote Fowlkes a ticket for "blocking crosswalk or interfering with pedestrian," which the ticket stated was a violation of City of Detroit ordinance number 46-3-1. 7/24/25 Hr'g Tr. at PageID.111; Ticket at PageID.76 (Dkt. 25-3). Fowlkes was not ticketed for the open fire.

## II. ANALYSIS

The Fourth Amendment provides that, "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "Encounters between police officers and citizens can be grouped into three categories: consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; a temporary involuntary detention or Terry stop which must be predicated upon reasonable suspicion; and arrests which must be based on probable cause." United States v. Campbell, 486 F.3d 949, 953–954 (6th Cir. 2007) (punctuation modified). The proponent of the motion to suppress bears the burden of establishing his Fourth Amendment rights were violated. United States v. Rodriguez Suazo, 346 F.3d 637, 643 (6th Cir. 2003).

Fowlkes makes three arguments regarding why his Fourth Amendment rights were violated: (i) the encounter was not consensual, (ii) the conduct for which he was ticketed was not a violation of law, and (iii) the officers cannot now rely on the violation of the open burning ordinance to justify their stop because it was not "within their knowledge" at the time of the stop and was not a fact upon which they relied. Reply at PageID.77–85. The Government counters by arguing that the encounter was consensual and that, even if it was not, there was probable cause that Fowlkes had committed a civil infraction. Resp. at PageID.60–65. As explained below, the Court finds no constitutional violation.

3

### A. Initial Encounter

"Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200 (2002). "So long as a reasonable person would feel free to disregard the police and go about his business, [] the encounter is considered consensual and no reasonable suspicion is required." Florida v. Bostick, 501 U.S. 429, 434 (1991) (punctuation modified). An individual is seized, however, when "under the totality of the circumstances, a reasonable person would have believed that he or she was not free to walk away." Brown v. Lewis, 779 F.3d 401, 412 (6th Cir. 2015) (punctuation modified). These circumstances include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. Jones, 562 F.3d 768, 772 (6th Cir. 2009) (punctuation modified).

The Sixth Circuit has further detailed factors for determining whether a person would feel free to leave. United States v. McCall, 433 F. App'x 432, 437 (6th Cir. 2011). Those factors include: "(1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as ... whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police." Id. (punctuation modified).

The Government argues that Fowlkes's encounter with the officers was consensual because the encounter took place on a public sidewalk, the officers did not draw their weapons or issue a command, and at any time, Fowlkes could have turned around and gone into his home as no officer was blocking his path. Resp. at PageID.61–62. Fowlkes argues that he was seized because he was

4

surrounded by officers, had flashlights trained on him, and he had already tried to walk away but he was "ordered" back to speak with the officers. Reply at PageID.78.

The Court agrees with the Government that the initial encounter was consensual. While there were three officers present, Fowlkes was not "surrounded" by them. See Grier BWC at 22:21:01–22:21:18. There was no officer blocking the path behind him or preventing him from turning around and entering his house. Id. None of the officers had their weapons drawn. 7/24/25 Hr'g Tr. at PageID.147;165–166. And the body-worn camera footage shows that none of the officers touched Fowlkes during the initial encounter, which lasted about twenty seconds.

Furthermore, the officers' use of flashlights, even if trained on Fowlkes does not, by itself, turn the encounter into a seizure. United States v. Berry, No. 21-111, 2022 WL 1819525 at *4 (E.D. Tenn., May 3, 2022) ("Although the Sixth Circuit has not directly addressed whether the use of 'takedown' lights constitutes a seizure, other courts have found the use of 'takedown' lights or other bright lights in police encounters is not inherently coercive such that it automatically results in a seizure."); see also United States v. Hayden, 759 F.3d 842, 846–847 (8th Cir. 2014) (holding that officers who identified themselves as police and shone a light on suspects did not seize them); Marshall v. United States, 422 F.2d 185, 189 (5th Cir. 1970) ("The mere use of a flashlight, however, does not magically transmute a non-accusatory visual encounter into a Fourth Amendment search.").

The Government is correct in its position that Fowlkes was not "ordered" to talk to the officers. Officer Grier's on-camera statement—"walking away as soon as we walk up, what's going on?"—was a question, not a command. The officers credibly testified that they did not

5

demand that Fowlkes turn around and speak with them.² One brief question did not transform the encounter into a seizure because "mere police questioning does not constitute a seizure." Bostick, 501 U.S. at 434.³ At one point during the hearing, Officer Grier testified that when he started talking to Fowlkes, Grier believed that Fowlkes was not free to leave. 7/24/25 Hr'g Tr. at PageID.163. An officer may well subjectively believe that he or she has a sufficient basis to detain or arrest the subject of an investigation. But an officer's "subjective intent in detaining an individual is irrelevant so long as that intent is not conveyed to the individual in a way that results in the individual believing that he or she is not free to leave." Warman v. Mount St. Joseph University, 144 F.4th 880, 890 (6th Cir. 2025) (punctuation modified). During the initial encounter, there is no evidence that the officers told Fowlkes that he was not free to leave, and no other circumstance of the encounter would have reasonably led Fowlkes to believe that.

Lastly, Fowlkes argues that the encounter should receive heightened Fourth Amendment protections because it occurred on his curtilage. Reply at PageID.79–80. "Although the Fourth

---

² See 7/24/25 Hr'g Tr. at PageID.147 (Q to Swart: "Did you order Fowlkes to stop walking to the house?" A: "No." Q: "Did you order him to come over to you?" A: "No."); PageID.160. (Q to Grier: "You don't recall what they said, but we acknowledge that something was said that caused him to turn around and come back down the stairs, right?" A: "I don't know what caused him to come back down the stairs. I know that we were speaking to him at which point he came back down the stairs.").

³ It is unclear what, if anything, was said to Fowlkes before the audio system on the camera started recording. See 7/24/25 Hr'g Tr. at PageID.107–108 (Q to Swart: "As you're sitting here today, do you recall and I'm not asking you what he said, but do you recall if Officer Grier made any statements prior to the statement you heard in this clip?" A: "Not that I recall, sir." Q: "[] do you recall if you made any statements prior to Officer Grier's statement in this clip to the individuals on the sidewalk?" A: "I do not."); PageID.154 (Q to Grier: "As you're sitting here today, do you recall if you said anything to Mr. Fowlkes prior to that moment?" A: "I can't recall what I said before then." [] Q: "Do you recall if any other officer present made a statement to the group of people on the sidewalk before you made a statement?" A: "No." Q: "No you don't recall or no they didn't make a statement?" A: "No I don't recall, sir."). Given the uncertainty whether anything was said to Fowlkes before what was captured by the camera, the Court rests its findings on the video evidence and in-court testimony.

Amendment protects the curtilage, a police officer has an implied license to enter the curtilage and attempt to speak with the home's occupant, even if the officer lacks a search warrant." Brennan v. Dawson, 752 F. App'x 276, 282 (6th Cir. 2018) (punctuation modified). The fact that the initial encounter occurred on, or near, Fowlkes's curtilage makes no difference because the officers were merely questioning Fowlkes.

All of the circumstances confirm the conclusion that the officers' initial encounter with Fowlkes was consensual.

### B. Probable Cause

Even if the initial encounter were not deemed consensual, the detention would be justified because there was probable cause that Fowlkes had committed a civil infraction. "In order to effect a traffic stop, an officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity." United States v. Lyons, 687 F.3d 754, 763 (6th Cir. 2012). This requires a "reasonable ground for belief, supported by less than prima facie proof but more than mere suspicion" that a civil infraction was being committed. United States v. Chambers, No. 13-20684, 2014 WL 3900585, at *2 (E.D. Mich. Aug. 11, 2014), aff'd, 646 F. App'x 445 (6th Cir. 2016) (punctuation modified).

The Government asserts that the officers stopped Fowlkes for interfering with the normal flow of pedestrian traffic and open burning in violation of Mich. Comp. Laws § 257.676b and Detroit City Code § 18-1-83, respectively. 7/24/25 Hr'g Tr. at PageID.101. Fowlkes argues that a pedestrian blockading the sidewalk is not a violation of any Detroit City ordinance or Michigan law. Mot. at PageID.42. As for the open fire violation, Fowlkes argues that the officers did not include that violation in their report, and thus it was not "within their knowledge" or a fact upon which they relied, precluding it as a basis for probable cause. Reply Br. at PageID.83–85.

7

The justification based on blockading of the sidewalk is problematic. The Government concedes that the ticket Swart issued to Fowlkes cited the incorrect ordinance. Resp. at PageID.64. In its response brief, the Government argues that it was the officers' "subjective intent" to issue a citation for loitering on a public sidewalk, which it cites as a violation of Detroit City Code § 38-1-3(b). Id. at PageID.63–64, n. 1. In his reply brief, Fowlkes points out that the anti-loitering ordinance in effect is actually Detroit City Code § 31-5-7 and to be in violation of it, an individual has to first have been told by a police officer to move and not complied. Reply at PageID.80–81. At the 7/24/25 hearing, the Government again conceded this mistake and announced that, in addition to the open fire ordinance violation, it was relying on a state statute prohibiting "interference with the normal flow of pedestrian traffic," in violation of Mich. Comp. Laws § 257.676b. See 7/24/25 Hr'g Tr. at PageID.101. The difficulty for the Government, however, is that the language of that statute does not cover activity on a sidewalk. And the Michigan Supreme Court has interpreted the statute to apply only when there is evidence that the flow of traffic was actually affected. See People v. Lucynski, 983 N.W.2d 827, 843 (Mich. 2022). While the Government attempts to avoid these problems by invoking the mistake of law doctrine, see Resp. at PageID.65, the Court need not address that issue, nor must it address the interference with traffic issue at all, because of the open burning violation.

There is no dispute that there was an open fire burning on the sidewalk. That was a violation of the open burning ordinance, Detroit City Code § 18-1-83.[4] The fire is seen in plain

---

[4] Section 18-1-83 – General prohibition on open burning; exceptions.

(a) Open burning is prohibited in the City of Detroit unless specifically permitted by Subsection (b) of this section.

(b) The following forms of open burning are permitted in the City to the extent that such burning does not cause a nuisance:

8

view on both officers' body worn cameras, and both officers credibly testified that it was one of the reasons that drew their attention to the group. See e.g., Grier BWC at 22:21:00–22:21:10; 7/24/25 Hr'g Tr. at PageID.104; 134–135.

Fowlkes argues that the open fire does not support probable cause, on the theory that the failure to include it in their police report means that it was not "within their knowledge." Reply at PageID.83–84. It is true that facts supporting probable cause have to be within the arresting or detaining officer's knowledge. See Dickerson v. McClellan, 101 F.3d 1151, 1155 n.3 (6th Cir. 1996) ("[W]e must consider only the facts the officers knew at the time of the alleged Fourth Amendment violation."). However, the officers here did know about the fire at the time of the alleged Fourth Amendment violation, as confirmed by the video evidence and the officers' testimony. Therefore, Fowlkes's argument on this point is incorrect.

In his supplemental brief, Fowlkes argues that the open fire violation cannot be used as a basis for probable cause because, he says, probable cause cannot turn on a fact upon which the officers did not actually rely when they detained Fowlkes. Def. Supp. Br. at PageID.201, citing United States v. Townsend, 305 F.3d 537 (6th Cir. 2002). Townsend does state that reasonable suspicion should not turn on "a factor on which the officer did not actually rely." Id. at 541.

---

(1) Campfires using clean wood on private property owned or leased by the person directly supervising the campfire and not within ten feet of any fixed flammable object or property line; and

(2) The operation of an outdoor cooking unit in a location that is:

    a. Within the rear yard or the side yard of private property and not within ten feet of any fixed flammable object or property line;
    b. Not directly beneath a roof or enclosure; and
    c. Under direct supervision of the property owner, lessee, or owner of the unit.

(Code 1984, § 19-1-112; Ord. No. 13-17, § 1(19-1-112), eff. 6-9-2017)

But Townsend is not good law. See United States v. Williams, 68 F.4th 304, 310 (6th Cir. 2023). The Sixth Circuit in Williams examined whether the district court erred in including the defendant's probationary status in its reasonable suspicion analysis even though the officer testified that she had not considered it. Id. The defendant had cited Townsend in support of his argument that the district court had erred in considering a factor that the officer had not. Id. The Williams court found that the district court did not err, because "[t]he lawfulness of a stop does not turn on the subjective motivation of the officer making it; it turns on the objective facts justifying the stop." Id. (punctuation modified). In reaching that conclusion, the Williams court noted that the First Circuit case upon which Townsend had relied, United States v. Lott, 870 F.2d 778, 783–784 (1st Cir. 1989), had recently been overturned, see United States v. Guerrero, 19 F.4th 547, 557 (1st Cir. 2021). Id. The Williams court also noted that the rule outlined in Townsend and Lott had "been overtaken by the tidal wave of intervening, contrary Supreme Court precedent." Id.

Thus, even if the Court were not to believe the officers' testimony that they sought to investigate the open fire violation, Townsend is not helpful to Fowlkes's case. Whether the officers here subjectively considered the open fire violation is irrelevant. Reasonable officers observing the open fire would be amply justified in investigating it, including by detaining Fowlkes to do so.

Because there was probable cause to support the stop, there was no constitutional violation.

### III. CONCLUSION

For the reasons stated above, Fowlkes's motion (Dkt. 20) is denied.

**SO ORDERED.**

Dated: December 17, 2025                s/Mark A. Goldsmith
Detroit, Michigan                       MARK A. GOLDSMITH
                                        United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 17, 2025.

                                        s/Joseph Heacox
                                        JOSEPH HEACOX
                                        Case Manager